**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| ALEEM UDDIN, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-14-104 |
| § | |
| HSBC BANK USA, N.A., § | |
| FEDERAL NATIONAL MORTGAGE § | |
| ASSOCIATION, § | |
| Defendants. § | |

**MEMORANDUM AND OPINION**

This is a dispute over a home mortgage foreclosure and attempted eviction. Aleem Uddin alleges that HSBC Bank USA, N.A. ("HSBC") and Federal National Mortgage Association ("Fannie Mae") wrongfully foreclosed on his home after orally offering him a loan modification, telling him not to make any payments during the loan-modification process, and promising that no foreclosure would occur in that period. The defendants removed to federal court and moved to dismiss. (Docket Entry Nos. 1, 3). Uddin filed an amended complaint, (Docket Entry No. 6), which the defendants again moved to dismiss. (Docket Entry No. 7). Uddin responded and the defendants replied. (Docket Entry No. 9, 12). After thoroughly considering the complaint; the motion, the response, and reply; and the applicable law, the court grants the motion to dismiss, with prejudice. (Docket Entry No. 7). Final judgment is separately entered. The reasons are explained below.

**I.     Background**

The following background is taken from the first amended complaint. Uddin purchased the home in Richmond, Texas on February 28, 2008. (FAC ¶¶ 4–5). HSBC later acquired the Note and Deed of Trust. (FAC ¶ 6). Uddin encountered financial difficulties that led him to discussions with

HSBC about ways to restructure the debt. (FAC ¶ 7). Uddin alleges that in December 2012, HSBC orally offered him a loan modification. (FAC ¶ 8). Uddin gathered financial documents HSBC asked for over the course of several months. (*Id.*). During this time, Uddin did not make any mortgage payments. He alleges that HSBC representatives told him that he "was not allowed to" make any mortgage payments while the loan modification was being processed. (*Id.*). HSBC representatives also allegedly told Uddin to ignore any foreclosure notices he received and stated that HSBC would not take any foreclosure action while the loan was in "modification status." (*Id.*). Uddin alleges that at his request, HSBC representatives "promised to confirm these agreements in writing," but Uddin did not receive any written confirmation of any of these statements. (*Id.*).

On April 2, 2013, HSBC foreclosed on Uddin's home and sold it to Fannie Mae. (FAC ¶ 10). Fannie Mae sent Uddin an eviction notice and, on July 29, 2013, Fannie Mae attempted to evict him. (FAC ¶ 11).

Uddin claims that HSBC breached the oral agreement not to foreclose on his home. (FAC ¶ 13). Uddin alleged that HSBC's statements that it would not foreclose was a fraudulent representation. Uddin also asserts a promissory-estoppel claim against HSBC. Finally, Uddin asserts a trespass-to-try title claim against Fannie Mae. (FAC ¶¶ 15, 18). HSBC and Fannie Mae moved to dismiss all the claims.

## II.     The Legal Standard for a Motion to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); *see Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly,*

550 U.S. 544, 555 (2007). To withstand a Rule 12(b)(6) motion, a complaint must "contain enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. The Supreme Court has explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 677. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Id.* Further, with respect to the fraud and fraudulent inducement claims, FED. R. CIV. P. 9(b) requires that Appellant "state with particularity the circumstances constituting the fraud." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (citing Fed. R. Civ. P. 9(b)). "'Put simply, Rule 9(b) requires the who, what, when, where, and how to be laid out.'" *Id.* (quoting *Benchmark Elecs., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir. 2003)).

**III.  Analysis**

   **A.  The Breach of Contract Claim**

HSBC moves to dismiss the breach of contract claim arising from the alleged oral promises to modify the loan and not pursue foreclosure. HSBC invokes the statute of frauds. Under Texas law, "[a] loan agreement in which the amount involved . . . exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." TEX. BUS. & COM. CODE § 26.02(b). "Loan agreement" means "one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of

3

money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation." TEX. BUS. & COM. CODE § 26.02(a)(2). HSBC's alleged oral promises to modify the loan and to defer foreclosure during loan modification are financial accommodations subject to the statute of frauds. The alleged oral agreements are unenforceable under the statute of frauds.

Uddin also asserts promissory estoppel, but it is only a "narrow exception to the statute of frauds.'" *Miller v. CitiMortgage, Inc.*, No 3:11-cv-2786, 2013 WL 4766808, at *7 (N.D. Tex. Sept. 5, 2013) (quoting *Trammel Crow Co. v. Harkinson*, 944 S.W.2d 631, 636 (Tex. 1997)). To establish promissory estoppel, the plaintiff must establish: (1) a promise; (2) foreseeable reliance on that promise by the promissee ; and (3) substantial detrimental reliance. *See Metropolitan Life Ins. Co. v. Haden & Co.*, 158 F.3d 584, 584 (5th Cir. 1998).

"For promissory estoppel to create an exception to the statute of frauds, there must have been a promise to sign a written agreement that had been prepared and that would satisfy the requirement of the statute of frauds." *1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 29 (Tex. App. –Houston [14th Dist.] 2005, pet. den.) (citing *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982)); *see also Williams v. Wells Fargo Bank, N.A.*, No. 13-10233, 2014 WL 1044304 (5th Cir. Mar. 19, 2014) ("The claim that Wells Fargo said the Williamses had been approved for a modification . . . does not include an allegation that there was a modification agreement 'that had already been prepared or whose wording had been agreed upon that would satisfy the statute of frauds.'" (citing *1001 McKinney Ltd.*, 192 S.W.3d at 29; *Southmark Corp v. Life Investors, Inc.*, 851 F.2d 763, 769 (5th Cir. 1988)). "'A promise to prepare a written contract is not sufficient. The defendant must have promised to sign a particular agreement which was in writing at the time.'" *George-Baunchand v. Wells Fargo Home Mortg., Inc.*, No. 10-cv-3828, 2011

4

WL 6250785, at *7 (S.D. Tex. Dec. 14, 2011) (Rosenthal, J.) (quoting *Beta Drilling, Inc. v. Durkee*, 821 S.W.2d 736, 741 (Tex. App. –Houston [14th Dist.] 1992, writ den.)). Because the agreement that HSBC allegedly breached was not in writing when the oral promise was made, the promissory-estoppel exception to the statute of frauds does not apply.

Uddin also asserts a novel estoppel-by-waiver exception to the statute of frauds. He asserts that his claim is not that HSBC orally modified the loan agreement. "Instead, he is asserting a more limited claim that HSBC cannot assert that he is in default under the original loan because it was HSBC's representations that induced the default." (Docket Entry No. 9 at 1). Uddin argues that HSBC waived the right to assert the statute of frauds because it induced Uddin's default by promising not to foreclose. Uddin relies on *Montalvo v. Bank of America Corp.*, 864 F. Supp. 2d 567 (W.D. Tex. 2012). Uddin's reliance on that case is misplaced.

First, in *Montalvo*, the court considered in dicta a "waiver exception" to the statute of frauds from the RESTATEMENT (SECOND) OF CONTRACTS. *Montalvo* expressly recognized that "Texas courts do not appear to have considered, much less adopted" the estoppel-by-waiver exception. *Id.* at 584. The *Montalvo* court invited further briefing on the theory and rejected it. *Montalvo v. Bank of America*, No 10-cv-360 (XR), 2013 WL 870088, at *8 (W.D. Tex. Mar. 7, 2013) ("The Court now determines that the representations are also unenforceable if they are construed as a unilateral promise not to foreclose.").

Second, the Texas statute of frauds precludes Uddin's position. The statute defines a loan agreement as any "combination [of promises, agreements, undertakings, deeds of trust or other documents or commitments] pursuant to which a financial institution . . . delays repayment of or agrees to . . . delay repayment of money," and requires those agreements to be in writing. TEX.

BUS. & COM. CODE § 26.02(a)(2). Under Uddin's approach, any oral promise to delay repayment would waive the repayment obligation. Uddin's "waiver exception" would swallow the rule that to be enforceable, a financial institution's promise to delay repayment of money above the statutory amount must be in writing.

Finally, a recent Fifth Circuit case weighs against Uddin's argument. *See Milton v. U.S. Bank Nat'l Ass'n*, No. 12-49742, 2013 WL 264561 (5th Cir. Jan. 18, 2013) ("The district court held, and we agree, that because there was no written agreement to delay foreclosure, plaintiff's breach of contract claim is barred by the statute of frauds."). Other district courts have expressed skepticism about *Montalvo*'s musing on waiver-by-estoppel. *See, e.g., Powell v. Bank of America, N.A.*, 4:12-cv-512, 2014 WL 229305, at *5 n.1 (Jan. 21, 2014); *Wiley v. Wells Fargo*, No. 3:11-cv-1241-B (JJB), 2012 WL 1945614, at *6 (N.D. Tex. May 30, 2012).

The oral promises Uddin alleges do not waive the statute of frauds. Uddin's breach-of-contract claim is barred. Neither the promissory-estoppel exception to the statute nor a waiver exception applies. The breach-of-contract claim is dismissed. The dismissal is with prejudice because leave to amend would be futile.

### B. The Promissory-Estoppel Claim

Uddin also asserts a promissory-estoppel claim, relying on the same arguments. "[W]hen promissory estoppel is used to enforce a promise that would be unenforceable because of the statute of frauds, the promise must be a promise to sign an already existing written agreement that would itself satisfy the requirements of the statute of frauds." *George-Baunchand*, 2011 WL 6250785, at *8 (quotation omitted). Uddin does not claim that HSBC promised him that it would sign an

existing written loan-modification agreement or foreclosure-deferral agreement.  The promissory-estoppel claim is dismissed, with prejudice, for the reasons discussed above.

### C.     The Fraud Claim

"To state a claim of fraud by misrepresentation under Texas law, a plaintiff must sufficiently allege (1) a [material] misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury." *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.,* 620 F.3d 465, 468 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.,* 51 S.W.3d 573, 577 (Tex.2001)).

Fraud claims must also comply with the Rule 9(b) pleading requirements.  Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. 9(b).  "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock,* 607 F.3d at 1032 (internal quotation marks omitted).  The plaintiff "must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 362 (5th Cir. 2004) (internal quotation marks omitted).  "Although Rule 9(b) expressly allows scienter to be 'averred generally', simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Melder v. Morris,* 27 F.3d 1097, 1102 (5th Cir. 1994).  "The plaintiffs must set forth specific facts supporting an inference of fraud." *Id.*

7

Uddin claims that HSBC fraudulently misrepresented that it would not accept his mortgage payments while the loan was in modification status, that he could ignore any foreclosure notices, and that it would not proceed with foreclosure. HSBC argues that the complaint does not meet the specificity requirements of Rule 9(b).

The complaint fails to met Rule 9(b)'s requirements. The fraud allegation states:

> In the alternative, the actions committed by HSBC constitute common law fraud because HSBC made false and material representations to Uddin when informing Uddin that he was not allowed to make any mortgage payments while in loan modification status. Further, HSBC's representatives informed him that he was to ignore any foreclosure notices that he received while in loan modification status. Moreover, HSBC's representatives informed him that they would not take any action to foreclose on his Property while in loan modification status. HSBC knew that the representations were false or made these representation recklessly, as a positive assertion, and without knowledge of its truth. In addition, HSBC made these representations with the intent that Uddin act on them and Uddin relied on these representations which caused Uddin's injury.

(Docket Entry No. 6. ¶ 15). The background section adds only the allegation that HSBC orally offered to modify the loan in December 2012 and that Uddin began obtaining and submitting documents at that time. But the complaint does not include any "who, when, and where" information about the three alleged misrepresentations. Vague references to "HSBC representatives" and statements that these representations occurred in the months following December 2012 do not meet Rule 9(b). Uddin has not identified who made the three alleged fraudulent statements, when they were made, or where they were made. *Shandong Yinguang Chem. Indus. Joint Stock Co.*, 607 F.3d at 1032; *see also Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 767 (N.D. Tex. 2013).

The court dismisses the fraud claim with prejudice because the briefing makes clear that these deficiencies cannot be cured. Although Uddin asserts that he will "be able to learn more through the discover process," he does not allege information that is available to him such as when the alleged representations were made, where they were made, or the person to whom Uddin was speaking. (Docket Entry No. 9 at 3).

### D.     The Trespass-to-Try-Title Claim

"To prevail in a trespass-to-try-title action, a plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned." *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004). "The pleading rules are detailed and formal, and require a plaintiff to prevail on the superiority of his title, not on the weakness of a defendant's title." *Id.* It is undisputed that the property was purchased at a foreclosure sale. Uddin does not claim any defects in the foreclosure proceedings. Uddin can not assert a trespass-to-try title claim. He does not argue that HSBC's interest in the property before foreclosure was invalid or unenforceable, or that the foreclosure sale was invalid. Nor does he claim superiority of title. *See Nguyen v. Federal Nat'l Mortg. Ass'n*, 958 F. Supp. 2d 781, 794 (S.D. Tex. 2013) (Rosenthal, J.) (granting summary judgment against a trespass-to-try title claim when the property was purchased at valid foreclosure sale and no evidence showed the plaintiff had superior title); *Sgroe v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 731, 751 (E.D. Tex. 2013) (dismissing a trespass-to-try title claim when it was "undisputed that the Property was purchased at a [valid] foreclosure sale" and plaintiff "failed to produce summary judgment evidence of his superiority of title").

Uddin's response brief argues that he is in possession of the property and has not yet abandoned it. He argues that he has claimed "title by prior possession coupled with proof that possession was not abandoned." "In general, the action of trespass to try title suit is in its nature a suit to recover the possession of land unlawfully withheld from the owner and to which he has the right of immediate possession." *Rocha v. Campos*, 574 S.W.2d 233, 236 (Tex. App. –Corpus Christi 1978, no writ.). Because Uddin still occupies the home, he cannot maintain a suit for trespass to try title. *See Hurd v. BAC Home Loans Servicing, L.P.*, 880 F. Supp. 2d 747, 767 (N.D. Tex. 2012) (dismissing trespass-to-try title claim with prejudice because the plaintiff still occupied the home).

The trespass-to-try title claim is dismissed, with prejudice.

**IV.   Conclusion**

The complaint is dismissed, with prejudice. Final judgment is separately entered.

SIGNED on April 21, 2014, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge